UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                 :

       -v-                              :

ARTHUR NIGRO,                            :
    a/k/a "Artie,"
    a/k/a "the Short Guy,"           :
    a/k/a "the Little Guy,"
FELIX TRANGHESE,                         :
EMILIO FUSCO,
FOTIOS GEAS,                             :
    a/k/a "Freddy," and
TY GEAS,                                 :

         Defendants.             :

- - - - - - - - - - - - - - - - - -x

<u>SUPERSEDING INDICTMENT</u>

S4 09 Cr. 1239 (PKC)



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7 20 10

<u>COUNT ONE</u>
(Racketeering Conspiracy)

    The Grand Jury charges:

<u>The Enterprise</u>

    1.    At all times relevant to this Indictment, ARTHUR
NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little
Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy,"
and TY GEAS, the defendants, were associated with or were members
of the Genovese Organized Crime Family of La Cosa Nostra (the
"Genovese Organized Crime Family").  The Genovese Organized Crime
Family was a criminal organization whose members and associates
have engaged in numerous crimes including murder; assault;
extortion; operating illegal gambling businesses; financing,
making, and collecting extortionate extensions of credit
(commonly known as "loansharking"); and narcotics trafficking.

2.    The Genovese Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4) -- that is, a group of individuals associated in fact.  The Genovese Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York, the District of Massachusetts, and elsewhere, and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

3.    The Genovese Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra" ("LCN"), which operated through entities known as "Families."  The Genovese Organized Crime Family took its name from one of its early leaders, Vito Genovese.  In addition to the Genovese Organized Crime Family, five other Families operated in the New York City and New Jersey area, namely, the Gambino Organized Crime Family of LCN, the Luchese Organized Crime Family of LCN, the Colombo Organized Crime Family of LCN, the Bonanno Organized Crime Family of LCN, and the Decavalcante Organized Crime Family of LCN.

2

4.    The Genovese Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City. Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected" or identified as "with" a Soldier or other member of the Family. Associates participated in the various activities of the crew and its members.

5.    Each Capo was responsible for supervising the criminal activities of his crew and provided Soldiers and associates with support and protection. In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

6.    Above the Capos were the highest-ranking members of the Genovese Organized Crime Family, commonly referred to as the "Administration." The head of the Genovese Organized Crime Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor. The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among

3

members of the Genovese Organized Crime Family, and resolving disputes between members of the Genovese Organized Crime Family and members of other criminal organizations.  The Administration of the Genovese Organized Crime Family was also responsible for overseeing the criminal activities of the Family's Capos, Soldiers and associates, and was at times called upon to make decisions regarding those criminal endeavors.

7.    The Genovese Organized Crime Family has taken significant steps to protect and insulate its Boss and other Administration members from detection and scrutiny by law enforcement.  These steps include appointing multi-member committees, and/or "panels," to oversee the daily affairs of the Genovese Organized Crime Family; and naming temporary, or "Acting" Bosses and other Administration positions.  In addition, at various times relevant to this Indictment, members of the Genovese Organized Crime Family served on a committee or ruling panel, a group of high-ranking members of the Family who assisted and, at times, made decisions with or on behalf of the Boss and the Acting Boss of the Family.

8.    The Boss, Underboss, and Consigliere (whether official or acting) and, at times, the members of the ruling panel, supervised, supported, protected, and disciplined the Capos, Soldiers, and associates, and regularly received reports regarding their various activities.  In return for their

4

supervision and protection, the Boss, Underboss, and Consigliere and members of the ruling panel typically received part of the illegal earnings of each crew.

<u>The Defendants</u>

9.    At various times relevant to this Indictment, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, was a made member of, and ultimately served as Acting Boss of, the Genovese Organized Crime Family. NIGRO, as a made member and Acting Boss of the Genovese Organized Crime Family, participated in the commission of various crimes, including, among other things, conspiracy to murder; murder; assault; extortion; labor violations; operating illegal gambling businesses; and loansharking.   In addition to crimes committed with New York-based Genovese Organized Crime Family members and associates, NIGRO participated in and profited from the illegal activities of the Soldiers and associates of Genovese Organized Crime Family crews that were active in other areas, including Springfield, Massachusetts, and Boca Raton, Florida.

10.    At various times relevant to this Indictment, FELIX TRANGHESE, the defendant, was a made member, and later a Capo of, the Genovese Organized Crime Family.   As a made member and Capo in the Genovese Organized Crime Family, TRANGHESE participated in the commission of various crimes, including,

among other things, conspiracy to murder; murder; extortion; and loansharking.

11.  At various times relevant to this Indictment, EMILIO FUSCO, the defendant, was a made member of the Genovese Organized Crime Family.  As a made member in the Genovese Organized Crime Family, FUSCO participated in the commission of various crimes, including, among other things, conspiracy to murder; murder; extortion; loansharking; operation of illegal gambling businesses; and narcotics trafficking.

12.  At various times relevant to this Indictment, FOTIOS GEAS, a/k/a "Freddy," the defendant, was an associate of the Genovese Organized Crime Family.  As an associate of the Genovese Organized Crime Family, FOTIOS GEAS participated in the commission of various crimes, including, among other things, conspiracy to murder; murder; assault; and extortion.

13.  At various times relevant to this Indictment, TY GEAS, the defendant, was an associate of the Genovese Organized Crime Family.  As an associate of the Genovese Organized Crime Family, TY GEAS participated in the commission of various crimes, including, among other things, conspiracy to murder; murder; assault; and extortion.

## Purposes of the Enterprise

14.   The purposes of the enterprise included the following:

a.   Enriching the leaders, members, and associates of the enterprise through, among other things, murder, assault, extortion, loansharking, the operation of illegal gambling businesses, and other crimes;

b.   Preserving and augmenting the power, territory, and financial profits of the enterprise through intimidation, violence, and threats of physical and economic harm;

c.   Keeping victims and citizens in fear of the enterprise and its leaders, members, and associates by: (i) identifying the enterprise, its members, and its associates with La Cosa Nostra or the "Mafia;" (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence; and

d.   Protecting the members and associates of the enterprise from detection and prosecution by law enforcement, by intimidating and seeking reprisal against other members and associates who provided testimony or other information to law enforcement personnel.

Means and Methods of the Enterprise

15.    Among the means and methods by which the
defendants and other enterprise members and associates conducted
and participated in the conduct of the affairs of the enterprise
were the following:

a.    To protect and expand the enterprise's
business and criminal operations, members and associates of the
enterprise murdered, threatened to murder, and assaulted persons
who engaged in activity that jeopardized (i) the power and
criminal activities of the enterprise and the power and criminal
activities of fellow LCN Families, (ii) the power of leaders of
the enterprise, and (iii) the flow of criminal proceeds to the
leaders of the enterprise.

b.    Members and associates of the enterprise
promoted a climate of fear in the community through threats of
economic harm and violence.

c.    Members and associates of the enterprise
generated income for the enterprise through murder, assault,
extortion, loansharking, gambling, and other crimes.

d.    Members and associates of the enterprise at
times engaged in criminal conduct or coordinated their criminal
activities with leaders, members, and associates of other LCN
Families.  At other times, members and associates of the

8

enterprise met with leaders, members, and associates of other LCN Families to resolve disputes over their criminal activities.

      e.   To avoid law enforcement scrutiny of the enterprise's criminal activities, members, and associates of the enterprise conducted meetings surreptitiously, typically using coded language to make arrangements for meetings, meeting at rest stops along highways and at diners, and engaging in "walk and talks."

      f.   Members and associates of the enterprise attempted to identify and did identify individuals suspected of providing, or deemed likely to provide, information to law enforcement about the enterprise, its members and activities, and about other LCN Families.

<u>The Racketeering Conspiracy</u>

      16.   From at least in or about 2001, up to and including in or about February 2010, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 15 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully,

willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to violate 18 U.S.C. § 1962(c), to wit, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of multiple acts indictable under the following provisions of federal law:

(a)  Title 18, United States Code, Section 1512, which prohibits murder for purposes of obstructing justice;

(b)  Title 18, United States Code, Section 1951, which prohibits extortion;

(c)  Title 18, United States Code, Sections 892 and 894, which prohibit making extortionate extensions of credit, and using extortionate means to collect and attempt to collect extensions of credit from debtors;

(d)  Title 18, United States Code, Section 1955, which prohibits operating an illegal gambling business;

(e)  Title 18, United States Code, Section 1952, which prohibits interstate travel to promote, manage, and facilitate an unlawful activity;

(f)  Title 29, United States Code, Section 186, which prohibits payments of things of value to union officials; and

(g)  Title 21, United States Code, Sections 841

and 846, which prohibit distributing and possessing with

intent to distribute narcotics;

and multiple acts involving murder, extortion, and operation of

illegal gambling businesses chargeable under the following

provisions of state law:

(a)  New York Penal Law, Sections 125.25 and

105.15, and Massachusetts General Laws Chapter 265, Section

1, and Chapters 274, Sections 2 and 7, involving murder;

(b)  New York Penal Law, Sections 155.05(2)(e),

155.40(2) and 105.10, and Massachusetts General Law, Chapter

265, Section 25, involving extortion; and

(c)  New York Penal Law, Sections 225.00, 225.05,

and 225.10, and Massachusetts General Law, Chapter 271,

Sections 16A, 17, and 5, involving illegal gambling.

17.  It was a part of the conspiracy that each of

ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the

Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a

"Freddy," and TY GEAS, the defendants, agreed that a conspirator

would commit at least two acts of racketeering activity in the

conduct of the affairs of the enterprise.

## Special Sentencing Allegations

18.  In or about Fall 2003, in the Southern District of

New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the

Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO

FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did commit an act involving murder and aided and abetted murder, to wit, with intent to cause the death of Adolfo Bruno, NIGRO, TRANGHESE, FUSCO, FOTIOS GEAS, TY GEAS, and others known and unknown did cause the death of Adolfo Bruno, in violation of New York State Penal Law, Sections 125.25 and 20.00 and Massachusetts General Laws Chapter 265, Section 1; and Chapter 274, Section 2.

19.   In or about Fall 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, with malice aforethought, willfully, deliberately, and with premeditation, killed and aided and abetted the killing of Adolfo Bruno to prevent his communicating to a law enforcement officer and judge of the United States information relating to the commission and possible commission of federal offenses, including, among other things, crimes committed by members and associates of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(a)(1)(C), 1512(a)(3)(A) and 2.

20.   On or about November 4, 2003, in the District of Massachusetts and elsewhere, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and

12

unknown, unlawfully, intentionally, and knowingly did murder and aid and abet the murder of Gary Westerman, in violation of Massachusetts General Laws Chapter 265, Section 1; and Chapter 274, Section 2.

21.   On or about November 4, 2003, in the District of Massachusetts and elsewhere, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, with malice aforethought, willfully, deliberately, and with premeditation, killed and aided and abetted the killing of Gary Westerman to prevent his communicating to a law enforcement officer and judge of the United States information relating to the commission and possible commission of federal offenses, including, among other things, crimes committed by members and associates of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(a)(1)(C), 1512(a)(3)(A) and 2.

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
(Racketeering)

The Grand Jury further charges:

22.   Paragraphs 1 through 15 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

23.   From in or about 2001, up to and including in or about February 2010, in the Southern District of New York and

13

elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy,"
a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS
GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others
known and unknown, being persons employed by and associated with
the racketeering enterprise described in Paragraphs 1 through 15
above, namely, the Genovese Organized Crime Family, which
enterprise was engaged in, and the activities of which affected,
interstate and foreign commerce, unlawfully, willfully, and
knowingly did conduct and participate, directly and indirectly,
in the conduct of the affairs of that enterprise through a
pattern of racketeering activity, as that term is defined in
Title 18, United States Code, Sections 1961(1) and 1961(5), that
is, through the commission of the following racketeering acts:

<u>The Pattern of Racketeering</u>

24.   The pattern of racketeering activity, as defined
in Title 18, United States Code, Sections 1961(1) and 1961(5),
consisted of the following acts:

**<u>Racketeering Act One - Murder of Adolfo Bruno and Conspiracy to
Murder Adolfo Bruno</u>**

25.   ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short
Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO,
FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants,
committed the following acts of racketeering, any one of which
alone constitutes the commission of Racketeering Act One:

a.    In or about Fall 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with others to murder Adolfo Bruno, in violation of New York State Penal Law, Sections 125.25 and 105.15 and Massachusetts General Laws Chapter 265, Section 1; and Chapter 274, Section 7.

b.    In or about Fall 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did commit an act involving murder and aided and abetted murder, to wit, with intent to cause the death of Adolfo Bruno, NIGRO, TRANGHESE, FUSCO, FOTIOS GEAS, and TY GEAS, and others known and unknown did cause the death of Adolfo Bruno, in violation of New York State Penal Law, Sections 125.25 and 20.00 and Massachusetts General Laws Chapter 265, Section 1; and Chapter 274, Section 2.

c.    In or about Fall 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE,

EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, with malice aforethought, willfully, deliberately, and with premeditation, killed and aided and abetted the killing of Adolfo Bruno to prevent his communicating to a law enforcement officer and judge of the United States information relating to the commission and possible commission of federal offenses, including, among other things, crimes committed by members and associates of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(a)(1)(C), 1512(a)(3)(A) and 2.

## Racketeering Act Two - Murder of Gary Westerman and Conspiracy to Murder Gary Westerman

26.   EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Two:

a.   On or about November 4, 2003, in the District of Massachusetts and elsewhere, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with others to murder Gary Westerman, in violation of Massachusetts General Laws Chapter 265, Section 1; and Chapter 274, Section 7.

b.   On or about November 4, 2003, in the District of Massachusetts and elsewhere, EMILIO FUSCO, FOTIOS GEAS, a/k/a

16

"Freddy," and TY GEAS, the defendants, and others known and
unknown, unlawfully, intentionally, and knowingly did murder and
aid and abet the murder of Gary Westerman, in violation of
Massachusetts General Laws Chapter 265, Section 1; and Chapter
274, Section 2.

       c.    On or about November 4, 2003, in the District
of Massachusetts and elsewhere, EMILIO FUSCO, FOTIOS GEAS, a/k/a
"Freddy," and TY GEAS, the defendants, and others known and
unknown, with malice aforethought, willfully, deliberately, and
with premeditation, killed and aided and abetted the killing of
Gary Westerman to prevent his communicating to a law enforcement
officer and judge of the United States information relating to
the commission and possible commission of federal offenses,
including, among other things, crimes committed by members and
associates of the Genovese Organized Crime Family, in violation
of Title 18, United States Code, Sections 1512(a)(1)(C),
1512(a)(3)(A) and 2.

## Racketeering Act Three - Conspiracy to Murder and Attempted Murder of Frank Dadabo

       27.    ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short
Guy," a/k/a "the Little Guy," FOTIOS GEAS, a/k/a "Freddy," and TY
GEAS, the defendants, committed the following acts of
racketeering, either one of which alone constitutes the
commission of Racketeering Act Three:

a.    In or about May 2003, in the Southern
District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie,"
a/k/a "the Short Guy," a/k/a "the Little Guy," FOTIOS GEAS, a/k/a
"Freddy," and TY GEAS, the defendants, and others known and
unknown, unlawfully, willfully, and knowingly did combine,
conspire, confederate, and agree together and with others to
murder Frank Dadabo, in violation of New York State Penal Law,
Sections 125.25 and 105.15.

b.    On or about May 19, 2003, in the Southern
District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie,"
a/k/a "the Short Guy," a/k/a "the Little Guy," FOTIOS GEAS, a/k/a
"Freddy," and TY GEAS, the defendants, and others known and
unknown, unlawfully, willfully, and knowingly did attempt to
murder Frank Dadabo, in violation of New York State Penal Law,
Sections 125.25, 110.00, and 20.00.

## Racketeering Act Four - Conspiracy to Murder Louis Santos

28.   In or about Fall 2003, in the Southern District of
New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the
Short Guy," a/k/a "the Little Guy," FOTIOS GEAS, a/k/a "Freddy,"
and TY GEAS, the defendants, and others known and unknown,
unlawfully, willfully, and knowingly did combine, conspire,
confederate, and agree together and with others to murder Louis
Santos, in violation of New York State Penal Law, Sections 125.25

and 105.15 and Massachusetts General Laws Chapter 265, Section 1;
and Chapter 274, Section 7.

### Racketeering Act Five - Extortion Conspiracy and Extortion

29.   ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short
Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO,
FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants,
committed the following acts of racketeering, any one of which
alone constitutes the commission of Racketeering Act Five:

### Extortion Under Federal Law

a.    From at least in or about 2002, up to and
including at least in or about 2006, in the Southern District of
New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the
Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO
FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants,
and others known and unknown, unlawfully, willfully, and
knowingly did combine, conspire, confederate, and agree together
and with others to commit extortion, as that term is defined in
Title 18, United States Code, Section 1951(b)(2), by obtaining
money and property from and with the consent of another person,
to wit, the owner of various strip clubs and other businesses in
Springfield, Massachusetts, which consent would have been and was
induced by the wrongful use of actual and threatened force,
violence, and fear, and thereby would and did obstruct, delay,
and affect commerce and the movement of articles and commodities

19

in commerce, as that term is defined in Title 18, United States
Code, Section 1951(b)(3), in violation of Title 18, United States
Code, Section 1951.

        b.    From at least in or about 2002, up to and
including at least in or about 2006, in the Southern District of
New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the
Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO
FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants,
and others known and unknown, through their positions as members
and associates in the Genovese Organized Crime Family of La Cosa
Nostra and through other means, unlawfully, willfully, and
knowingly did commit extortion, and aid and abet the commission
of extortion, as that term is defined in Title 18, United States
Code, Section 1951(b)(2), by obtaining money and property from
and with the consent of another person, to wit, the owner of
various strip clubs and other businesses in Springfield,
Massachusetts, which consent was induced by the wrongful use of
actual and threatened force, violence, and fear, and thereby did
obstruct, delay, and affect commerce and the movement of articles
and commodities in commerce, as that term is defined in Title 18,
United States Code, Section 1951(b)(3), in violation of Title 18,
United States Code, Sections 1951 and 2.

<u>Extortion Under Massachusetts Law</u>

        c.    From at least in or about 2002, up to and
including at least in or about 2006, in the Southern District of

New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did by verbal and written communication maliciously threaten an injury to the person and property of another, to wit, the owner of various strip clubs and other businesses in Springfield, Massachusetts, with intent thereby to extort money and pecuniary advantage, and with intent to compel such person to do an act against his will, in violation of Massachusetts General Laws Chapter 265, Section 25.

### Racketeering Act Six - Extortion Conspiracy and Extortion

30.   FELIX TRANGHESE, the defendant, committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Six:

#### Extortion Under Federal Law

a.   From at least in or about 2001, up to and including in or about 2006, in the District of Massachusetts and elsewhere, FELIX TRANGHESE, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with others to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the owners

of a vending machine business located in Springfield, Massachusetts, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Section 1951.

        b.    From at least in or about 2001, up to and including in or about 2006, in the District of Massachusetts and elsewhere, FELIX TRANGHESE, the defendant, and others known and unknown, through their positions as members and associates in the Genovese Organized Crime Family of La Cosa Nostra and through other means, unlawfully, willfully, and knowingly did commit extortion, and aid and abet the commission of extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the owners of a vending machine located in Springfield, Massachusetts, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Sections 1951 and 2.

Extortion Under Massachusetts Law

        c.   From at least in or about 2001, up to and
including in or about 2006, in the District of Massachusetts and
elsewhere, FELIX TRANGHESE, the defendant, and others known and
unknown, unlawfully, willfully, and knowingly did by verbal and
written communication maliciously threaten an injury to the
person and property of another, to wit, the owners of a vending
machine business located in Springfield, Massachusetts, with
intent thereby to extort money and pecuniary advantage, and with
intent to compel such persons to do an act against their will, in
violation of Massachusetts General Laws Chapter 265, Section 25.

## Racketeering Act Seven – Extortion Conspiracy

        31.   In or about 2004, in the District of Massachusetts
and elsewhere, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the
defendants, and others known and unknown, unlawfully, willfully,
and knowingly did combine, conspire, confederate, and agree
together and with others to commit extortion, as that term is
defined in Title 18, United States Code, Section 1951(b)(2), by
obtaining money and property from and with the consent of another
person, to wit, the owners of a vending machine business located
in Springfield, Massachusetts, which consent would have been and
was induced by the wrongful use of actual and threatened force,
violence, and fear, and thereby would and did obstruct, delay,
and affect commerce and the movement of articles and commodities

in commerce, as that term is defined in Title 18, United States
Code, Section 1951(b)(3), in violation of Title 18, United States
Code, Section 1951.

### Racketeering Act Eight - Extortion Conspiracy and Attempted Extortion

32.   ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short
Guy," a/k/a "the Little Guy," FELIX TRANGHESE, FOTIOS GEAS, a/k/a
"Freddy," and TY GEAS, the defendants, committed the following
acts of racketeering, either one of which alone constitutes the
commission of Racketeering Act Eight:

a.    In or about 2004, in the Southern District of
New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the
Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, FOTIOS GEAS,
a/k/a "Freddy," and TY GEAS, the defendants, and others known and
unknown, unlawfully, willfully, and knowingly did combine,
conspire, confederate, and agree together and with others to
commit extortion, as that term is defined in Title 18, United
States Code, Section 1951(b)(2), by obtaining money and property
from and with the consent of another person, to wit, the owners
of a strip club located in New York, New York, which consent
would have been and was induced by the wrongful use of actual and
threatened force, violence, and fear, and thereby would and did
obstruct, delay, and affect commerce and the movement of articles
and commodities in commerce, as that term is defined in Title 18,

24

United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Section 1951.

b.    In or about 2004, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did attempt to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the owners of a strip club located in New York, New York, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Section 1951.

### Racketeering Act Nine - Loansharking

33.    ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Nine:

a.    From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York

and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to make extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, a loan of $100,000 to Victim-1, in violation of Title 18, United States Code, Section 892.

b.   From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully and knowingly made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, a loan of $100,000 to Victim-1, in violation of Title 18, United States Code, Section 892.

c.   From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to use extortionate means to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and

26

to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO and others agreed to threaten Victim-1 with economic harm if he did not repay a $100,000 loan, in violation of Title 18, United States Code, Section 894.

      d.   From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly used extortionate means to collect and attempt to collect extensions of credit, as that term is defined in Title 18, United States Code, Sections 891(1), 891(5), and 891(7), and to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO and others threatened Victim-1 with economic harm if he did not repay a $100,000 loan, in violation of Title 18, United States Code, Sections 894 and 2.

### Racketeering Act Ten - Loansharking

      26.   ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Ten:

      a.   From at least in or about 2002, up to and including in or about November 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the

27

Short Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to make extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans totaling approximately $45,000 to various borrowers, in violation of Title 18, United States Code, Section 892.

b.   From at least in or about 2002, up to and including in or about November 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, loans totaling approximately $45,000 to various borrowers, in violation of Title 18, United States Code, Sections 892 and 2.

c.   From at least in or about 2002, up to and including in or about November 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly advanced money and property, as a loan, investment, pursuant to a partnership and profit-sharing agreement, or otherwise, to another, with reasonable grounds to believe that it was the intention of that person to

use the money and property so advanced directly and indirectly for the purpose of making extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, NIGRO advanced approximately $45,000 to other members and associates of the Genovese Organized Crime Family with reasonable grounds to believe that those individuals intended to make extortionate extensions of credit, in violation of Title 18, United States Code, Section 893.

        d.   From at least in or about 2002, up to and including in or about November 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to use extortionate means to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO and others agreed to use threats of physical violence and actual violence in order to ensure repayment of loans totaling approximately $45,000 from various borrowers, in violation of Title 18, United States Code, Section 894.

        e.   From at least in or about 2002, up to and including in or about November 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the

Short Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly used extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO and others used and attempted to use threats of physical violence and actual violence in order to ensure repayment of loans totaling approximately $45,000 from various borrowers, in violation of Title 18, United States Code, Sections 894 and 2.

## Racketeering Act Eleven - Operating Illegal Gambling Business

34.   From at least in or about 2002, up to and including in or about April 2005, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, which operated illegal gambling activities, including illegal video gambling machines, bookmaking and sports betting, in violation of New York State Penal Law Sections 225.00, 225.05, and 225.10 and Massachusetts General Law Chapter 271, Section 16A, and which business involved five and more persons who did conduct, finance, manage, supervise, direct, and own all and part of it, and which business had been and

30

remained in substantially continuous operation for a period in excess of thirty days and had gross revenues of $2,000 in a single day, in violation of Title 18, United States Code, Sections 1955 and 2.

### Racketeering Act Twelve - Narcotics Trafficking

35. From at least in or about 2002, up to and including in or about February 2010, in the District of Massachusetts and elsewhere, EMILIO FUSCO, the defendant, and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

36. It was a part and an object of the conspiracy that EMILIO FUSCO, the defendant, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

37. The controlled substance involved in the offense was mixtures and substances containing a detectable amount of marijuana, in violation of 21 U.S.C. § 841(b)(1)(D).

(Title 18, United States Code, Section 1962(c).)

### COUNT THREE
(Murder of Adolfo Bruno in Aid of Racketeering)

The Grand Jury further charges:

38. At all times relevant to this Indictment, the Genovese Organized Crime Family, as more fully described in

Paragraphs 1 through 15 of this Indictment, which are repeated, realleged, and incorporated by reference as though set forth fully herein, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which was engaged in, and the activities of which affected, interstate and foreign commerce.   The Genovese Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York, the District of Massachusetts, and elsewhere, and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

39.   In or about Fall 2003, in the Southern District of New York and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay something of pecuniary value from the Genovese Organized Crime Family, an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in the Genovese Organized Crime Family, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did murder and aid and abet the murder of Adolfo Bruno, in violation of New York Penal Law, Sections 125.25 and 20.00 and

32

Massachusetts General Laws Chapter 265, Section 1; and Chapter
274, Section 2.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

**COUNT FOUR**
(Murder of Gary Westerman in Aid of Racketeering)

The Grand Jury further charges:

40.   At all times relevant to this Indictment, the
Genovese Organized Crime Family, as more fully described in
Paragraphs 1 through 15 of this Indictment, which are repeated,
realleged, and incorporated by reference as though set forth
fully herein, constituted an enterprise, as that term is defined
in Title 18, United States Code, Section 1959(b)(2), that is, a
group of individuals associated in fact, although not a legal
entity, which was engaged in, and the activities of which
affected, interstate and foreign commerce.   The Genovese
Organized Crime Family was an organized criminal group based in
New York City that operated in the Southern District of New York,
the District of Massachusetts, and elsewhere, and constituted an
ongoing organization whose members functioned as a continuing
unit for a common purpose of achieving the objectives of the
enterprise.

41.   On or about November 4, 2003, in the Southern
District of New York and elsewhere, as consideration for the
receipt of, and as consideration for a promise and an agreement
to pay something of pecuniary value from the Genovese Organized

33

Crime Family, an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in the Genovese Organized Crime Family, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did murder and aid and abet the murder of Gary Westerman, in violation of Massachusetts General Laws Chapter 265, Section 1; and Chapter 274, Section 2.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT FIVE
### (Murder for the Purpose of Obstructing Justice)

The Grand Jury further charges:

42.  In or about Fall 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, with malice aforethought, willfully, deliberately, and with premeditation, killed and aided and abetted the killing of Adolfo Bruno to prevent his communicating to a law enforcement officer and judge of the United States information relating to the commission and possible commission of federal offenses, including, among other things, crimes committed by members and associates of the Genovese Organized Crime Family.

(Title 18, United States Code, Sections 1512(a)(1)(C),
1512(a)(3)(A) and 2.)

34

## COUNT SIX
(Extortion Conspiracy)

The Grand Jury further charges:

43.    From at least in or about 2002, up to and
including in or about 2006, in the Southern District of New York
and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short
Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO,
FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and
others known and unknown, unlawfully, willfully, and knowingly
did combine, conspire, confederate, and agree together and with
others to commit extortion, as that term is defined in Title 18,
United States Code, Section 1951(b)(2), by obtaining money and
property from and with the consent of another person, to wit, the
owner of various strip clubs and other businesses in Springfield,
Massachusetts, which consent would have been and was induced by
the wrongful use of actual and threatened force, violence, and
fear, and thereby would and did obstruct, delay, and affect
commerce and the movement of articles and commodities in
commerce, as that term is defined in Title 18, United States
Code, Section 1951(b)(3).

(Title 18, United States Code, Section 1951.)

## COUNT SEVEN
(Extortion)

The Grand Jury further charges:

44.    From at least in or about 2002, up to and
including in or about 2006, in the Southern District of New York

35

and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, and others known and unknown, through their positions as members and associates in the Genovese Organized Crime Family of La Cosa Nostra and through other means, unlawfully, willfully, and knowingly did commit extortion, and aid and abet the commission of extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the owner of various strip clubs and other businesses in Springfield, Massachusetts, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3).

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT EIGHT
(Conspiracy to Make Extortionate Extensions of Credit)

The Grand Jury further charges:

45.   From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine,

conspire, confederate, and agree together and with each other to make an extortionate extension of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, a loan of $100,000 to Victim-1.

(Title 18, United States Code, Section 892).

## COUNT NINE
(Extortionate Extensions of Credit)

The Grand Jury further charges:

46.  From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully and knowingly made an extortionate extension of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, a loan of $100,000 to Victim-1.

(Title 18, United States Code, Sections 892 and 2.)

## COUNT TEN
(Conspiracy to Collect Extortionate Extensions of Credit)

The Grand Jury further charges:

47.  From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to use extortionate means to collect extensions of credit as that

37

term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO and others caused Victim-1 to fear physical and economic harm if Victim-1 did not repay a $100,000 loan.

(Title 18, United States Code, Section 894).

## COUNT ELEVEN
### (Extortionate Collection of Credit)

The Grand Jury further charges:

48.   From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly used extortionate means to collect and attempt to collect extensions of credit, as that term is defined in Title 18, United States Code, Sections 891(1), 891(5), and 891(7), and to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO and others caused Victim-1 to fear physical and economic harm if Victim-1 did not repay a $100,000 loan.

(Title 18, United States Code, Sections 894 and 2.)

## COUNT TWELVE
### (Operation of An Illegal Gambling Business)

The Grand Jury further charges:

49.   From at least in or about 2001, up to and including in or about April 2005, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short

Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, which operated illegal gambling activities, namely a bookmaking and sports betting operation, in violation of New York State Penal Law Sections 225.00, 225.05, and 225.10 and Massachusetts General Laws Chapter 271, Sections 16A, 17, and 5, which business involved five and more persons who did conduct, finance, manage, supervise, direct, and own all and part of it, and which business had been and remained in substantially continuous operation for a period in excess of thirty days and had gross revenues of $2,000 in a single day.

(Title 18, United States Code, Sections 1955 and 2.)

## COUNT THIRTEEN
(Interstate Travel in Aid of Racketeering)

The Grand Jury further charges:

50.  From at least in or about 2002, up to and including in or about 2006, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, and FOTIOS GEAS, a/k/a "Freddy," the defendants, did travel and use a facility in interstate commerce with intent to distribute the proceeds of an unlawful activity and to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit,

39

unlawful activity involving gambling and extortion in violation of the laws of New York, Massachusetts, and the United States, and thereafter did perform and attempt to perform an act to promote, carry on, and facilitate the promotion and carrying on of said unlawful activity, to wit, NIGRO, TRANGHESE, FUSCO, and FOTIOS GEAS, traveled and caused others to travel between New York and Massachusetts in order, among other things, to extort businesses located in Massachusetts and New York, to transport the proceeds from extortion and illegal gambling operations from Massachusetts to New York, and to report on the status of such illegal activities.

(Title 18, United States Code, Sections 1952 and 2.)

## FORFEITURE ALLEGATION

(As to Counts One and Two)

51.   The allegations contained in Counts One and Two of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.  Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, the defendants, that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any of the

defendants' conviction under Counts One and Two of this Indictment.

52.   The defendants, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS:

i.   have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii.   have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

53.   The interests of the defendants, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS, subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1) and (a)(3), include, but are not limited to, a sum of money equal to the amount of proceeds obtained as a result of the foregoing offenses, in the amount of at least $1 million.

Substitute Assets Provision

54.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants-

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Section 1963.)

## FORFEITURE ALLEGATION

(As to Counts Six through Eleven)

55.   As a result of committing one or more of the offenses alleged in Counts Six through Eleven of this Indictment, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," FELIX TRANGHESE, EMILIO FUSCO, FOTIOS GEAS, a/k/a "Freddy," and TY GEAS the defendants, shall forfeit to the United

42

States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, including but not limited to at least approximately $1 million in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offense.

<u>Substitute Assets Provision</u>

56.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981 and
Title 28, United States Code, Section 2461.)

43

## FORFEITURE ALLEGATION

(As to Count Twelve)

57.   As a result of committing the gambling offense alleged in Count Twelve of this Indictment, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a the Little Guy," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, and pursuant to Title 18, United States Code, Section 1955(d), any property, including money, used in violation of Title 18, United States Code, Section 1955.

## Substitute Assets Provision

58.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(1)   cannot be located upon the exercise of due diligence;

(2)   has been transferred or sold to, or deposited with, a third party;

(3)   has been placed beyond the jurisdiction of the court;

(4)   has been substantially diminished in value; or

(5)   has been commingled with other property which cannot be divided without difficulty;

44

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Sections 981 and 1955, and Title 28, United States Code, Section 2461.)


_____          _____
FOREPERSON                       PREET BHARARA
                                 United States Attorney

45

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ARTHUR NIGRO, a/k/a "Artie,"
a/k/a "the Short Guy,"
a/k/a "the Little Guy,"
FELIX TRANGHESE,
EMILIO FUSCO,
FOTIOS GEAS, a/k/a "Freddy," and
TY GEAS,

Defendants.

## SUPERSEDING INDICTMENT

S4 09 Cr. 1239 (PKC)

(Title 18, United States Code, Sections 892, 894, 1512 1951,
1955, 1959(a)(1), 1959 a)(5), 1962(c), 1962(d) and 2; Title 21,
United States Code, Sections 841, 846.)

FOREPERSON

PREET BHARARA
United States Attorney